### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:23-CR-635** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **GUY A. LONG,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter is before the Court on Defendant's Motion to Suppress.  (ECF #18.)  The Government has filed its Response (ECF #20) and Defendant has Replied in Support (ECF #21.) The Government also filed a Notice of Supplemental Authority.  (ECF #23.)  In lieu of a hearing, the parties filed Joint Stipulations and Waiver of Objections authenticating evidence relevant to the Court's consideration (ECF #19A, #21-1 and #24-1 through 24-5 ("Cam. Exh. 1-5")) and waiving objection to the Court's consideration of the evidence.  The matter is fully briefed and ripe for ruling.  For the following reasons, Defendant's motion is **DENIED.**

### BACKGROUND FACTS

During an investigation conducted at a Cleveland, Ohio area gas station known for drug trafficking and firearms related offenses, law enforcement agents observed Defendant have an encounter with two males from inside his vehicle consistent with drug trafficking.  (ECF #21-1.) After the encounter, Defendant exited the vehicle and walked to the corner of the gas station.  *Id.* Defendant urinated on the side of the premises.  *Id.*  While Defendant was outside the vehicle,

1

officers observed the purple handle of a handgun in his waistband, clearly visible against Defendant's white shirt.  *Id.*  After he finished urinating, Defendant pulled his shirt back over the weapon, concealing it from view.  *Id.*  Defendant then returned to his vehicle.  *Id.*

Four agents shortly thereafter conducted a stop of Defendant.  *Id.*  Multiple law enforcement vehicles approached Defendant's vehicle with their emergency lights activated and the agents exited their vehicles with weapons drawn.  (Cam. Exh. 2 and 3, timestamp 00:38:12) Defendant was instructed to place his hands in the air and not to reach for a firearm, but he did not comply.  (ECF #21-1)  Instead, Defendant was observed bent over in the driver seat turned toward the passenger seat and making movements reaching toward the rear passenger compartment.  *Id.*  Defendant thereafter complied with officers' commands and placed his hands in the air.  *Id.*

Law enforcement agents simultaneously interacted with the Defendant and a female passenger in the vehicle.  An agent handcuffed Defendant and removed him from the vehicle. (Cam. Exh. 2, timestamp 00:38:20-52.)  At the same time, another agent asked the female passenger about a gun plainly visible in her lap.  (Cam. Exh. 4, timestamp 00:38:31-41.)  The passenger responded that it was her gun and the agent removed it from her person.[1]  *Id.*

After Defendant was handcuffed, he was instructed to get out of the vehicle.  (Cam. Exh. 2, timestamp 00:38:36.)  Defendant complied and was taken to the back of his vehicle.  *Id.*, timestamp 00:38:40-53.  The agent who instructed Defendant to get out of the vehicle transferred Defendant to another agent and begin examining the interior of the vehicle.  *Id.*, timestamp 00:38:53-55.  The new agent asked Defendant his name and, "What was that in your waistband?"

---

[1]  The passenger was subsequently removed from the vehicle and handcuffed.  (Cam. Exh. 5, timestamp 00:39:00-40:00.)

(Cam. Exh. 2, timestamp 00:39:05-35.)  Defendant replied that "It was a toy" and denied having a gun.  *Id.*  The officer further asked, "It was a toy gun?"  *Id.*  The bodycam videos fail to clearly capture the exchange after the "toy gun" question, but, after Defendant responded, the agent clearly states Defendant is under arrest and begins to issue a *Miranda* warning.  *Id.,* timestamp 00:39:24-34.  Defendant interrupts the *Miranda* warning to further deny having a gun and to explain that it was his phone.  *Id.*  The agent then completed giving Defendant the *Miranda* warning.  *Id.,* timestamp 00:39:34-42.

The agents searched the vehicle and seized drug paraphernalia, a digital scale and plastic bags containing green leafy substance from the vehicle.  (ECF #21-1.)  Law enforcement agents also seized a loaded handgun with a purple grip from the floorboard behind the front passenger seat, in the same area Defendant was reaching for during law enforcement's approach to the vehicle and with a color consistent with agents' prior observation of a handgun in Defendant's waistband.  *Id.;* Cam. Exh. 3, timestamp 00:42:45.

## LAW AND ARGUMENT

Defendant seeks to suppress his statements and any later mention or reference to these statements after law enforcement questioned him without providing *Miranda* warnings.  (ECF #18.)  Defendant contends that surrounding a person with guns drawn, then immediately handcuffing them, places them in custody such that they must be informed of their *Miranda* rights before any lawful questioning may be conducted.  The Government contends the encounter was a *Terry* stop for which no *Miranda* warnings were necessary or, if *Miranda* warnings were required, the requirement was excused under the public safety exception.

In *Miranda v. Arizona*, the Supreme Court extended the Fifth Amendment privilege against compulsory self-incrimination to individuals subjected to custodial interrogation by the police.  384 U.S. 436, 460–61 (1966).  However, there are exceptions.  "[S]tatements obtained in

violation of *Miranda* need not be suppressed when the questioning is conducted to address an

ongoing "public safety" concern.  *Vega v. Tekoh,* 142 S. Ct. 2095, 2103 (2022) (citing *New York*

*v. Quarles,* 467 U. S. 649, 654-657 (1984)).

The initial question before the Court is whether the stop of Defendant amounted to a

custodial stop that should have triggered a *Miranda* warning.  Defendant contends that

"[s]urrounding a person with guns drawn, then immediately handcuffing them, places them in

custody and is not a *Terry* stop."  (ECF #21 at 1.)  But approaching with guns drawn and

handcuffing a suspect is not per se custody.  In fact, the Sixth Circuit has concluded oppositely:

"[T]he use of guns, handcuffs, and detention in a police cruiser do not automatically transform a

*Terry* stop into an arrest, [but] these displays of force must be warranted by the circumstances."

*Brown v. Lewis,* 779 F.3d 401, 415 (6th Cir. 2015) (citing *Smoak v. Hall,* 460 F.3d 768, 781 (6th

Cir. 2006)).  "Intrusive measures are warranted to secure a detainee only where specific facts

lead to an inference that the detainee poses a risk of flight or of violence to the officers."  *Brown,*

779 F.3d at 415.

Here, the Court finds the facts lead to an inference that Defendant posed a risk of

violence to the officers.  Prior to the stop, agents witnessed the grip of a handgun sticking out of

Defendant's waistband.  At the initiation of the stop, Defendant was instructed to place his hands

in the air, but he did not immediately comply.  Instead, Defendant turned his back and was seen

making movements toward the rear passenger compartment.  At this point in the encounter, the

agents do not know the location of the purple-handled handgun and would reasonably infer a risk

of violence.  Accordingly, the Court finds approaching the vehicle with guns drawn and

handcuffing Defendant prior to any questioning did not transform the encounter from an

investigatory *Terry* stop to custody such that a *Miranda* warning was necessary before any lawful questions.

Even if the Court were to accept the proposition that approaching a vehicle with guns drawn and handcuffing a suspect before questioning is a per se custodial interrogation, operation of the public safety doctrine would excuse the agents' failure to give the *Miranda* warning prior to asking about the missing firearm.

"[T]here is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence. *Quarles*, 467 U.S. at 655. The exception applies "when officers have a reasonable belief based on articulable facts that they are in danger." *United States v. Talley,* 275 F.3d 560, 563 (6th Cir. 2001). "For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *United States v. Williams,* 483 F.3d 425, 428 (6th Cir. 2007). "The public safety exception applies if and only if both of those two conditions are satisfied and no other context-specific evidence rebuts the inference that the officer reasonably could have perceived a threat to public safety." *Id.*

The agents had reason to believe that Defendant was armed or recently had a weapon; the agents saw Defendant with a handgun. Further, they witnessed activity that their training and experience was consistent with drug trafficking. An agent "could reasonably rely upon the well-known fact that drug trafficking often involves the use of weapons, creating the necessary nexus between drug transactions and weapons searches." *United States v. Carter,* 558 F. App'x 606, 612 (6th Cir. 2014). The second prong of the analysis is also met. Defendant was not alone; the handgun could have been retrieved and used by the passenger in the vehicle or any other

passerby had the Defendant disposed of the weapon prior to entering the vehicle.  Accordingly, because both prongs have been met the public safety exception to *Miranda* applies.  *Cf. United States v. Chaplin,* No. 1:16-CR-00001-GNS, 2017 U.S. Dist. LEXIS 53673, at *22 (W.D. Ky. Feb. 17, 2017), report and recommendation adopted, *United States v. Chaplin,* No. 1:16-CR-00001-GNS, 2017 U.S. Dist. LEXIS 53438, at *9 (W.D. Ky. Apr. 7, 2017).

## CONCLUSION

The facts and circumstances of Defendant's removal from the vehicle did not automatically transform the encounter beyond a *Terry* stop such that Defendant should have been given a *Miranda* warning.  Further, even if Defendant were entitled to a *Miranda* warning before agents questioned him about the handgun they had witnessed on his person, the public safety exception excuses the agents failure to give the warning.  Defendant's motion to suppress is DENIED.

IT IS SO ORDERED.

/s  Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: April 22, 2024

6